IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 121,109

STORMONT-VAIL HEALTHCARE, INC.,
*Appellee,*

v.

HAROLD E. SIEVERS,
*Appellant.*

SYLLABUS BY THE COURT

Wages can be "earnings" under K.S.A. 2020 Supp. 60-2310(a)(1) even after they are paid if the employee can directly and specifically identify the funds as wages. Such earnings cannot be garnished under K.S.A. 61-3505(b)(1).

Review of the judgment of the Court of Appeals in 58 Kan. App. 2d 152, 463 P.3d 431 (2020). Appeal from Shawnee District Court; TIM KECK, judge pro tem. Opinion filed November 24, 2021. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded with directions.

*Paul Shipp*, of Kansas Legal Services, of Manhattan, argued the cause, and *Lowell C. Paul*, of the same office, of Topeka, was with him on the briefs for appellant.

*Zachary A. King*, of Butler & Associates, PA, of Topeka, argued the cause, and *Stephanie B. Poyer*, of the same firm, was on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.:  Today we hold that wages can be "earnings" under K.S.A. 2020 Supp. 60-2310(a)(1) even after they are paid if the employee can directly and specifically

1

identify the funds as wages. In so doing, we reverse the contrary holdings of the lower courts and remand this matter to the district court with directions.

FACTUAL AND PROCEDURAL BACKGROUND

Stormont-Vail Healthcare, Inc., sued Harold E. Sievers for $3,008.09 plus costs and interest. Sievers consented to the judgment, which was entered on January 16, 2019. On January 31 Stormont-Vail filed two garnishment requests. First, the hospital asked to garnish Sievers' wages from Kansas State University naming the State of Kansas as the garnishee. The hospital also filed the garnishment request at issue in this case, naming Capitol Federal Savings Bank as garnishee and asking to garnish the bank account into which Sievers' K-State paychecks were deposited via direct deposit. Garnishment orders were issued to both garnishees the next morning.

Key to today's dispute, the orders were requested and issued under different statutes. The State of Kansas garnishment order was issued under K.S.A. 2020 Supp. 61-3507(b) which "must apply if the garnishment is to attach earnings" and attaches to "the nonexempt portion of the judgment debtor's earnings for all pay periods which end while the order is in effect," as calculated pursuant to K.S.A. 2020 Supp. 60-2310. Earnings are defined by K.S.A. 2020 Supp. 60-2310(a)(1) as "compensation *paid or payable* for personal services." (Emphasis added.)

The Capitol Federal garnishment order, however, was issued under K.S.A. 61-3505(b)(1) which "shall apply if the garnishment is to attach intangible property *other than earnings* of the judgment debtor," and provides that the order has "the effect of attaching . . . [a]ll tangible property, funds, credits or other indebtedness belonging to or owing the judgment debtor, *other than earnings* . . . ." (Emphasis added.)

2

Sievers' net pay was $749.59 for the pay period ending on January 26, 2019. That amount was electronically deposited into his account at Capitol Federal on February 8, 2019. Sievers' uncontested testimony was that only wages went into this account. The day before the February 8 paycheck was deposited, Sievers' account had a balance of $56.70, which he testified were wages from his previous paycheck. Capitol Federal withheld $707.01 plus a $15 administrative fee. Being unaware of the garnishment on his account, Sievers' debit card was declined during an attempted purchase transaction later that afternoon. Sievers then objected to the Capitol Federal garnishment arguing the funds in his bank account were "earnings" and as such, they could only be garnished under K.S.A. 2020 Supp. 61-3507.

The district court and Court of Appeals disagreed with Sievers' objection and ordered Capitol Federal to pay the withheld funds to Stormont-Vail. The courts each held that Sievers' wages "lost their status as 'earnings'" as a matter of law and could be garnished under K.S.A. 61-3505 once his paycheck was deposited in his bank account. See *Stormont-Vail Healthcare v. Sievers*, 58 Kan. App. 2d 152, 157-58, 463 P.3d 431 (2020).

Sievers timely appealed and we granted review. K.S.A. 20-3018(b). Jurisdiction is proper. K.S.A. 60-2101(b).

DISCUSSION

Even though Sievers' testimony concerning the identity of the funds in his Capitol Federal account was undisputed, the district court did not make any factual findings about the source or identity of those funds. Thus, the only issue before us is the lower courts' holdings that the source of the funds is legally irrelevant because, as a matter of law,

3

wages cease to be "earnings" after they are deposited into a bank account. Resolving this question is a matter of statutory interpretation.

> "The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. In ascertaining this intent, we begin with the plain language of the statute, giving common words their ordinary meaning. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. But if a statute's language is ambiguous, we will consult our canons of construction to resolve the ambiguity. [Citations omitted.]" *Johnson v. U.S. Food Service*, 312 Kan. 597, 601, 478 P.3d 776 (2021).

Here, we are required to consider three separate statutes. The first, K.S.A. 61-3505, applies "if the garnishment is to attach intangible property *other than earnings* of the judgment debtor." (Emphasis added.) The second, K.S.A. 2020 Supp. 61-3507, applies "if the garnishment is to attach earnings." And finally, for garnishment purposes, earnings are defined in K.S.A. 2020 Supp. 60-2310(a)(1) as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus or otherwise."

The question before us is clear and narrow. If wages can never be considered earnings after being deposited into a bank account, a creditor may garnish that intangible property under K.S.A. 61-3505. If, on the other hand, such wages can remain earnings based on factual findings that specifically and directly identify those funds as paid wages, then the property can only be garnished under the more restrictive K.S.A. 2020 Supp. 61-3507.

Stormont-Vail argues, and the Court of Appeals majority held, that K.S.A. 2020 Supp. 60-2310 creates restrictions on "wage garnishment" which are intended to apply

4

only in the confines and context of an employer-employee relationship. The Court of Appeals held that because "the meaning of 'earnings' . . . is inextricably tied to the employer-employee relationship, once a judgment debtor's 'earnings' fall outside the employer-employee relationship—i.e., . . . compensation for a given pay period is paid out—his or her wages lose their status as 'earnings' and become 'other than earnings.'" *Sievers*, 58 Kan. App. 2d at 157. Further, the Court of Appeals majority pointed out that the Legislature did not specify "a restriction on garnishment for deposited wages directly traceable to earnings." 58 Kan. App. 2d at 160. But tellingly, the Court of Appeals noted that Sievers' "argument appears to apply an ordinary meaning to the word 'paid.'" The majority declined to give effect to this plain meaning, however, on the grounds that to do so would remove the "definition of 'earnings' from the narrow confines of the employer-employee transactional relationship." 58 Kan. App. 2d at 156-57.

We cannot so easily dispense with the statute's plain and ordinary meaning. The Legislature's choice of the past tense verb "paid" is an unmistakable indication that by its own terms, K.S.A. 2020 Supp. 60-2310 defines earnings as something that can exist outside the confines of the employer-employee relationship. Because once wages are paid, the property has been moved outside the employment relationship. Which is to say that an employer has no more control over paid wages than any other unconnected third party. We are convinced that the simple, ordinary, plain language of K.S.A. 2020 Supp. 60-2310 means that "paid" wages may in certain factual circumstances be deemed earnings for purposes of garnishment.

The parties make a variety of compelling arguments drawn from principles of economics as well as decisions of other courts, but we agree with then-Judge Standridge who in dissent wrote: "[W]e need not look to prior cases from [the Court of Appeals] or cases from foreign jurisdictions but instead to the relevant language of the statute itself." 58 Kan. App. 2d at 162 (Standridge, J., dissenting).

Given this, we reverse the lower courts' holdings that as a matter of law, paid wages can never be earnings. This leaves unresolved the question of whether the specific money in Sievers' Capitol Federal bank account was actually earnings or not. To establish that specific intangible property—that is money—is a paid wage (and therefore identifiable as earnings), a debtor must show that the intangible property is directly and specifically traceable to his or her wages.

As a practical matter, we observe here that this may prove difficult to establish when a bank account contains a mixture of paid wages and other, nonwage money. Though where, as here, there is uncontested evidence that the account contained only and exclusively paid wages, the debtor may be able to satisfy his or her burden to show that the intangible property is factually identifiable as earnings. Because the district court here explicitly declined to make factual findings, and because appellate courts do not engage in fact-finding, we are left with no choice but to remand this matter to the district court for further proceedings consistent with this opinion. See *State v. Yazell*, 311 Kan. 625, 627, 465 P.3d 1147 (2020) (citing *State v. Thomas*, 288 Kan. 157, 161, 199 P.3d 1265 [2009]).

Reversed and remanded with directions.

ROSEN and STANDRIDGE, JJ., not participating.
JOHN F. BOSCH, district judge, assigned.[1]
KEVEN M.P. O'GRADY, district judge, assigned.[2]

---

[1]**REPORTER'S NOTE:** District Judge Bosch was appointed to hear case No. 121,109 vice Justice Rosen under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.

[2]**REPORTER'S NOTE:** District Judge O'Grady was appointed to hear case No. 121,109 vice Justice Standridge under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.